## No. 6485.

GEORGE W. BANCKER vs. W. HARRINGTON & CO. ET AL.    TEMPLE S. COONS & CO. INTERVENORS.

Lands situated in another State can not be seized in a garnishment proceeding instituted here.

The assignment of its assets for the benefit of its creditors, made by a defunct partnership to an individual member of a new partnership succeeding to the former business of the old concern, will not make the new partnership liable to the defunct partnership for the value of any of its assets, and therefore not amenable to a garnishment at the suit of any creditor of the defunct concern.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier,* J.

*A. & W. Voorhies,* for plaintiff and appellant.

*Clarke, Bayne & Renshaw* for intervenors.

*A. Pilié,* curator *ad hoc,* for defendants and appellees.

The opinion of the court was delivered by

EGAN, J. Plaintiff, lessor, sued the defendants, lessees, and their sureties, for the lease given of the Arkansas Press, in the city of New Orleans. A large quantity of cotton in the press at the time, belonging

to other persons, and standing on the books of the cotton press in the name of Temple S. Coons & Co., commission merchants, for the several owners, was provisionally seized. Some of it was subsequently released by order of the plaintiff, and the remainder was released on the bond of the intervenors. This cotton was not liable to seizure or to plaintiff's privilege as lessor, and all controversy in regard to it has been abandoned by plaintiff's counsel in this court in his oral argument. An attachment was sued out by supplemental petition and garnishment proceedings instituted against Temple S. Coons & Co. and the members of said firm—Coons and L. O. Bridewell. They answered, denying any indebtedness to the defendants or the possession or control of any property or assets belonging to them. Their answer was traversed, and the traverse referred to and tried with the merits. Harrington & Co. had been agents for the Mississippi State Grange, and as such, and as commission merchants, had received the cottons provisionally seized for account of the several owners. They failed and suspended business, and turned over all the cottons conveyed to them by the Patrons of Husbandry to Bridewell, an officer of the Grange, selected as its agent to receive the cotton from Harrington & Co., who also made to Bridewell an assignment and delivery of their books, accounts, etc., for the benefit of their creditors of the Grange with whom they were largely in arrears. This assignment was accepted, and Bridewell with the aid of his firm proceeded to administer and control those assets for the benefit of those for whose benefit the assignment was made; with the consent and under the direction of the Grange he also turned over the cottons delivered to him by Harrington & Co. to Temple S. Coons & Co., who were selected as the new agents and commission merchants of the Grange and its members. All this occurred before the attachment of plaintiff. The books of Harrington & Co. were produced and examined, and reported upon by experts appointed by the court. From that report, and from the books, it appears that Harrington & Co. were indebted to some of their patrons, and others indebted to them, and while the books and accounts show a considerable sum in mere figures due to Harrington & Co. it is also shown that their indebtedness to those for whose benefit the assignment and delivery of their books, claims, etc., had been made was nearly as large; that the debtors were non-residents, scattered over a large extent of country, many of the accounts small, and, so far as appears, that they were, like the book accounts of other similar concerns, of comparatively little practical avail. Bridewell, when on the stand as a witness, swears *that through the influence* of the Grange he might be able to collect some of them, but that after his investigations into the affairs of Harrington & Co. he regarded the assets turned over to him as of very little avail, evidently not nearly

sufficient to pay the parties for whose benefit he held them. Aside from these there was transferred a tract of land in Mississippi, which, even if worth its estimated value, and if that value was realized, was insufficient to pay the beneficiaries under the assignment. That, however, is immaterial, as land lying in Mississippi could not be seized in Louisiana by process of garnishment or otherwise.

Under the facts presented, it is immaterial to inquire, as we are invited to do by plaintiff's counsel, whether the books of Harrington & Co. have been kept and balanced properly or not, as, even accepting his view of the question, it would not change the result, for the reasons before stated. There is nothing in the evidence then to contradict the sworn answers of the garnishees, and nothing to impugn their good faith in their dealings with the matters in controversy. Neither the intervenors nor Coons had any transactions or dealings with Harrington & Co., nor had Bridewell, as a member of his firm, any. As agent for the Grange and assignee for the benefit of the creditors of Harrington & Co. he received the cotton and turned it over to this firm, the new agents selected, and used his firm also for his convenience in managing the assets turned over under the assignment. There was judgment below in favor of the plaintiff against the defendants for the lease price and interest, and against him in favor cf the intervenors and garnishees and dissolving the attachment and setting aside the provisional seizure.

It is correct, and is therefore affirmed, with costs of appeal to be paid by the plaintiff, who alone has appealed.